1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MATT GROVES and VERN DEOCHOA, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| COSTCO WHOLESALE CORPORATION, a Washington corporation. | |
| Defendant. | |

1.      Plaintiffs Matt Groves and Vern Deochoa, at all times relevant herein, have filled prescriptions and received pharmacy services from Costco Wholesale Corporation ("Costco" or "Defendant"), and bring this class action individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions, their counsels' investigation, and upon information and belief as to all other matters, as follows:

2.      Plaintiffs bring this case to address Defendant's unlawful practice of disclosing Plaintiffs' and Class Members' confidential, personally-identifiable information ("PII") and protected, health information ("PHI") (collectively referred to as "Private Information") to unauthorized third parties via tracking technologies and analytics software embedded on its

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

website ("Tracking Tools"). One of the Tracking Tools Defendant installed on its Website is the Facebook pixel, which works in conjunction with related marketing tools and caused patients' Private Information to be sent to Meta Platforms, Inc. d/b/a Meta ("Facebook") without patients' consent when they used Defendant's website.

3.     On information and belief, Defendant's websites and Tracking Tools have also transmitted patients' Private Information to additional unauthorized third-parties for marketing and advertising purposes, including Google and Adobe.

4.     Defendant owns and controls https://www.costco.com/pharmacy ("Defendant's Website" or the "Website"), which it encourages its patients to use for the following purposes: (1) to register for the Costco Member Prescription Program ("CMPP"), which allows patients to enter and refill prescriptions directly from the warehouse; (2) enroll in its Rx Mail Order program or view their existing home delivery account; (3) check the status of their prescriptions; (4) find information about their prescription medications, pricing, and insurance coverage for Costco's Mail Order Pharmacy; and (6) to locate other information related to their prescriptions and medical treatment.

5.     Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), pharmacies such as Defendant's are "covered entities" and are required to follow strict rules regarding the use and disclosure of individuals' health information. [1]

6.     Unbeknownst to patients, Defendant installed Tracking Tools on its Website, which surreptitiously manipulated their web browsers, thereby causing their communications with the Defendant via the Website to be shared and/or intercepted by unauthorized third parties.

---

[1] 42 U.S.C. § 1320d; 45 C.F.R. Part 160-45 C.F.R. Part 162, and 45 C.F.R. Part 164. Defendant is engaged in the sale and dispensing of drugs in accordance with prescriptions, and therefore qualifies as a "person or organization who furnishes, bills, or is paid for health care." *Id.*

CLASS ACTION COMPLAINT - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

7.      Plaintiffs and Class Members used the Website to submit information related to their prescriptions. The Private Information unauthorized third parties received revealed individual patients' identities and details about the confidential health care they sought and received from Defendant, including the name of their prescription medications, dosage, and form of the medication, and more. In turn, these disclosures allow third parties to reasonably infer that a specific patient was being treated for a specific type of medical condition such as cancer, pregnancy, HIV, mental health conditions, and an array of other symptoms or conditions.

8.      The information collected and disclosed by Defendant's Tracking Tools is not anonymous. Facebook connects user data from Defendant's Website to the individual's Facebook ID (FID). The FID links the user to his/her Facebook profile, which contains detailed information about the profile owner's identity.

9.      Similarly, Google "stores users' logged-in identifier on non-Google website in its logs. Whenever a user logs-in on non-Google websites, whether in private browsing mode or non-private browsing mode, the same identifier is associated with the data Google collects from the user's browsing activities on that website. Google further logs all such data (private and non-private) within the same logs and uses these data for serving personalized ads."[2]

10.     Simply put, the health information disclosed through the Tracking Tools is personally identifiable.

---

[2] *See Brown v. Google, Inc.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) (citing internal evidence from Google employees). Google also connects user data to IP addresses; IP addresses have been classified by the United States Department of Health and Human Services ("HHS") as personally identifying information. *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Dept of Online and Hum. Servs. (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

CLASS ACTION COMPLAINT - 3

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

11.     The United States Department of Health and Human Services (HHS) has established "Standards for Privacy of Individually Identifiable Health Information" (also known as the HIPAA "Privacy Rule") governing how health care providers must safeguard and protect Private Information. Under the Privacy Rule, no health care provider – including pharmacies like Defendant – can disclose a person's personally identifiable protected health information to a third party without express written authorization.

12.     In addition, as explained further below, HHS has specifically warned healthcare regulated entities—such as Defendant—that tracking technologies like the ones used on its Website transmit personally identifying information to third parties, and that such information should not be transmitted without a HIPAA-compliant written authorization from patients.

13.     The Federal Trade Commission (FTC) has also warned hospitals and other entities that "even if you are not covered by HIPAA, you still have an obligation to protect against impermissible disclosures of personal health information under the FTC Act and the FTC Health Breach Notification Rule."[3]

---

[3] The FTC further clarified that entities who are not covered by HIPAA are nonetheless required to obtain affirmative express consent prior to disclosing health information, which is defined as: "any freely given, specific, informed, and unambiguous indication of an individual's wishes demonstrating agreement by the individual, such as by a clear affirmative action, following a Clear and Conspicuous disclosure to the individual, apart from any 'privacy policy,' 'terms of service,' 'terms of use,' or other similar document, of all information material to the provision of consent. Acceptance of a general or broad terms of use or similar document that contains descriptions of agreement by the individual along with other, unrelated information, does not constitute Affirmative Express Consent. Hovering over, muting, pausing, or closing a given piece of content does not constitute Affirmative Express Consent. Likewise, agreement obtained through use of a user interface designed or manipulated with the substantial effect of subverting or impairing user autonomy, decision-making, or choice, does not constitute Affirmative Express Consent." *United States of America v. Easy Healthcare Corporation d/b/a Easy Healthcare* (N.D. Ill 2023), Stipulated Settlement accessible online https://www.ftc.gov/system/files/ftc_gov/pdf/2023.06.22_easy_healthcare_signed_order_2023.pdf (last access October 13, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

14.     In addition, both Washington and California state law, including the Washington Uniform Health Care Information Act ("WUHCIA") and California Medical Information Act ("CMIA") expressly prohibits the disclosure of Private Information without express written authorization.

15.     Despite these clear laws and regulations, Defendant has essentially planted a bug on patients' web browsers that forced them disclose private and confidential communications to third parties. Defendant did not disclose the presence of these Tracking Tools to Website users filling prescriptions with Costco.

16.     Patients simply do not anticipate or expect that their trusted healthcare provider will send personal health information or confidential medical information regarding their prescriptions to a hidden third party—let alone social media networks and online advertisers like Facebook, which has a sordid history of privacy violations in pursuit of ever-increasing advertising revenue— without patient consent. Patients did not sign a written authorization permitting Defendant to send their Private Information to Facebook, and Defendant does not have a HIPAA-compliant business associate agreement with Facebook.

17.     Defendant breached its statutory and common law obligations to its patients by, inter alia,: (i) failing to remove or disengage technology that was known and designed to share patients Private Information, including sensitive details such as the exact name of their prescription medications; (ii) failing to obtain the written consent of patients to disclose their Private Information to Facebook and any other unauthorized third parties with whom Defendant has failed to execute a HIPAA-compliant business associate agreement; (iii) failing to take steps to block the transmission of patients' Private Information via Tracking Tools on its Website; (iv) failing to

CLASS ACTION COMPLAINT - 5

1  warn patients; and (v) otherwise failing to design, and monitor its Website to maintain the

2  confidentiality and integrity of patient Private Information.

3       18.    As a result of Defendant's conduct, patients have suffered numerous injuries,

4  including: (i) invasion of privacy; (ii) loss of benefit of the bargain, (iii) diminution of value of the

5  Private Information, (iv) statutory damages, and (v) the continued and ongoing risk to their Private

6  Information.

7       19.    Plaintiffs seek to remedy these harms and brings causes of action for (1) violation

8  of Washington's Consumer Protection Act ("WCPA"), RCW § 19.86.020; (2) violation of

9  Washington's Privacy Act, RCW § 9.73.030;  (3) violation of the Electronics Communication

10  Privacy Act ("ECPA") 18 U.S.C. § 2511(1) – unauthorized interception, use, and disclosure; (4)

11  breach of implied contract; (5) breach of fiduciary duty of confidentiality; (6) unjust enrichment;

12  (7) negligence; (8) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code

13  § 630, *et seq*.; and (9) violations of the California Medical Information Act ("CMIA"), Cal. Civ.

14  Code § 56, *et seq*.

## **PARTIES**

15       20.    Plaintiff Matt Groves is a natural person and citizen of California, where he intends

16  to remain, and he is one of Defendant's patients.

17       21.    Plaintiff Vern Deochoa is a natural person and citizen of California, where he

18  intends to remain, and he is one of Defendant's patients.

19       22.    Defendant, Costco Wholesale Corporation is a Washington general stock

20  corporation with its principal place of business located at 999 Lake Drive, Issaquah, WA 98027.

21       23.    Among other retail services as a "membership warehouse club," Defendant offers

22  one-stop shopping for prescription medications:

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Costco members who want the value and quality of our products now have the convenience and privacy of shopping at home. You can order new prescriptions and refills for medications currently filled at Costco.com, 24 hours a day. They can be delivered anywhere in the United States. Costco.com offers a wide variety of non-prescription remedies, vitamins & herbal supplements, and home health monitors & devices to help you manage your health.[4]

24.    Defendant is a covered entity under the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. § 1320d and 45 C.F.R. Part 160-45 C.F.R. Part 162, and 45 C.F.R. Part 164 ("HIPAA")).

## JURISDICTION & VENUE

25.    This Court has subject matter jurisdiction over their action under 28 U.S.C. § 1332(d) because this case is brought as a class action where the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different than Defendant.

26.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this Complaint alleges question of federal laws under the ECPA (18 U.S.C. § 2511, *et seq.*).

27.    The Court has personal jurisdiction over Defendant because Costco Wholesale Corporation is headquartered in this District at 999 Lake Drive, Issaquah, WA 98027.

28.    Venue is proper under 28 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

## COMMON FACTUAL ALLEGATIONS

**A. The U.S. Department of Health and Human Services and Federal Trade Commission Have Warned about Use of Tracking Tools by Healthcare Providers**

---

[4]    https://www.costco.com/pharmacy/about-home-delivery (last visited October 12, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

29.     In December 2022, HHS issued a bulletin (the "HHS Bulletin") warning regulated entities like Defendant about the risks presented by the use of Tracking Tools on their websites:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. ***For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.***[5]

In other words, the HHS has expressly stated that entities who implement Tracking Tools, such as Defendant, have violated HIPAA Rules unless they have obtained a HIPAA-complaint authorization from their patients.

30.     The HHS Bulletin further warns that:

> While it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors, ***because of the proliferation of tracking technologies collecting sensitive information, now more than ever, it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule.***[6]

31.     In addition, HHS and the FTC have recently issued a letter, once again admonishing entities like Defendant to stop using Tracking Tools:

> If you are a covered entity or business associate ("regulated entities") under HIPAA, you must comply with the HIPAA Privacy, Security, and Breach Notification Rules (HIPAA Rules), with regard to protected health information (PHI) that is transmitted or maintained in electronic or any other form or medium. ***The HIPAA Rules apply when the information that a regulated entity collects through tracking technologies or discloses to third parties (e.g., tracking technology vendors) includes PHI. . .*** Even if you are not covered by HIPAA, you still have an obligation to protect against impermissible disclosures of personal health information under the FTC Act and the FTC Health Breach Notification Rule. . . As recent FTC enforcement actions demonstrate, it is essential to monitor data flows of health information

---

[5] *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 1, 2022), available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited October 11, 2023) (emphasis added).

[6] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

to third parties via technologies you have integrated into your website or app. The disclosure of such information without a consumer's authorization can, in some circumstances, violate the FTC Act as well as constitute a breach of security under the FTC's Health Breach Notification Rule.[7]

**B. Underlying Web Technology**

32.     To understand Defendant's unlawful data-sharing practices, it is important first to understand basic web design and tracking tools.

33.     Devices (such as computer, tablet, or smart phone) access web content through a web browser (e.g., Google's Chrome browser, Mozilla's Firefox browser, Apple's Safari browser, and Microsoft's Edge browser).

34.     Every website is hosted by a computer "server" that holds the website's contents and through which the entity in charge of the website exchanges communications with Internet users' client devices via their web browsers.

35.     Web communications consist of HTTP or HTTPS Requests and HTTP or HTTPS Responses, and any given browsing session may consist of thousands of individual HTTP Requests and HTTP Responses, along with corresponding cookies:

- **Universal Resource Locator ("URL")**: a web address.

- **HTTP Request**: an electronic communication sent from the client device's browser to the website's server. GET Requests are one of the most common types of HTTP Requests. In addition to specifying a particular URL, GET Requests can also send data to the host server embedded inside the URL, and can include cookies.

- **Cookies**: a small text file that can be used to store information on the client device

---

[7] *Re: Use of Online Tracking Technologies*, U.S. Dept. of Health & Hum. Servs. and Fed. Trade. Comm'n (July 20, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/FTC-OCR-Letter-Third-Party-Trackers-07-20-2023.pdf

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

which can later be communicated to a server or servers. Cookies are sent with HTTP Requests from client devices to the host server. Some cookies are "third-party cookies," which means they can store and communicate data when visiting one website to an entirely different website.

- **HTTP Response**: an electronic communication that is sent as a reply to the client device's web browser from the host server in response to an HTTP Request. HTTP Responses may consist of a web page, another kind of file, text information, or error codes, among other data.[8]

36.     Every website is comprised of Markup and "Source code." Source code is simply a set of instructions that commands the website visitor's browser to take certain actions when the web page first loads or when a specified event triggers the code. Source code is essentially the back of the website, and the user does not see what happens in the source code.

37.     Source code may also command a web browser to send data transmissions to third parties in the form of HTTP Requests quietly executed in the background without notifying the web browser's user. Tracking Tools are embedded in the Source Code, which instruct the Website to send a second set transmissions to third parties' servers.

38.     By contrast, the Markup is the façade of the Website and what the user sees.

39.     As an example, a patient's HTTP Request seeks specific information from the Defendant's Website (e.g., "Fill a Prescription" page), and the HTTP Response provides the requested information in the form of "Markup," forming the webpage's content and features.

---

[8] One browsing session may consist of hundreds or thousands of individual HTTP Requests and HTTP Responses.

CLASS ACTION COMPLAINT - 10

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

40.     When a patient visits the Website and selects the "Online Pharmacy" button, their web browser automatically sends an HTTP Request to Defendant's web server, which automatically returns an HTTP Response and loads the Markup for that particular webpage. As depicted in the screenshot below, the user only sees the Markup, not Defendant's Source Code or underlying HTTP Requests and Responses.



*Figure 1. The image above is a screenshot taken from the user's web browser upon visiting www.costco.com/pharmacy (last accessed Oct. 19, 2023).*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

41.     Behind the scenes, Defendant's Tracking Tools effectively open a hidden spying window into the patient's browser, which surreptitiously and automatically records, transmits, and disseminates, the patients' interactions on the Website, including the exact text they type, the names of their prescription medications, and other Private Information.[9]

**C.  Tracking Tools**

42.     Third parties, offer "free" or discounted Tracking Tools to advertisers in the form of software that can be integrated into their webpages, mobile applications, and servers, thereby enabling the interception and collection of user communications and activity on those platforms.

43.     The Tracking Tools are used to gather, identify, target, and market products and services to individuals.  Thus, while "free" to a website owner such as Defendant, the Tracking Tools are actually bartered in exchange for user data. In the absence of these Tracking Tools, Defendant would have needed to spend money on independent computer engineers and HIPAA compliant software that achieves the same result without violating patients' privacy.

44.     In general, Tracking Tools are automatically configured to capture certain information, such as when a user visits a particular webpage and that webpage's URL. Advertisers, such as Defendant, can track other user actions and communications and can create their own tracking parameters by customizing the software on their website.

45.     When a user accesses a webpage that is hosting Tracking Tools, the user's communications with the host webpage are instantaneously and surreptitiously duplicated and sent to the third party. For example, the Facebook Pixel on Defendant's Website causes the user's web

---

[9] When used in the context of a screen or visual display, a "pixel" is the smallest unit in such a digital display. An image or video on a device's screen can be made up of millions of individual pixels. For example, the Facebook Pixel is a tiny image file that is so small as to be invisible to website users. It is purposefully designed and camouflaged in their manner so that website users remain unaware of it.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

browser to instantaneously duplicate the contents of the communication with the Website (such as a request to fill a particular prescription) and send the duplicate from the user's browser directly to Facebook's server.

46.     Notably, transmissions only occur on webpages that contain Tracking Tools.[10] Thus, patients' Private Information would not have been disclosed to Facebook or other unauthorized third parties via this technology but for Defendant's decisions to install the Tracking Tools on its Website, including webpages that transmit PHI.

47.     Sometimes a particularly tech-savvy user attempts to circumvent browser-based wiretap technology, so a website operator can also transmit data directly to Facebook through the use of first-party cookies and server-to-server transmission. Users cannot detect or prevent transmissions through first-party cookies.

48.     Conversions API ("CAPI") is a Facebook tool that functions as a redundant measure (in addition to the Facebook Pixel) to circumvent any ad blockers or other denials of consent by the website user by transmitting information directly from Defendant's servers to Facebook's servers.[11, 12]

49.     The third parties to whom a website transmits data through Tracking Tools and associated workarounds such as CAPI do not provide any substantive Website content relating to

---

[10] For example, Defendant's Facebook Pixel has its own unique identifier (represented as id=I707542376568799), which can be used to identify which of Defendant's webpages contain the Facebook Pixel.

[11] *What is the Facebook Conversions API and how to use it*, Realbot (last updated  May 20, 2022), https://revealbot.com/blog/facebook-conversions-api/ (last visited Jan. 24, 2023).

[12] "Server events are linked to a dataset ID and are processed like events sent via the Meta Pixel…. Their means that server events may be used in measurement, reporting, or optimization in a similar way as other connection channels.", https://developers.facebook.com/docs/marketing-api/conversions-api (last visited October 10, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

the user's communications. Instead, these third parties are typically procured to track user data and communications for marketing purposes of the website owner (*i.e.,* to bolster profits).

50.     Thus, without any knowledge, authorization, or action by a user, a website owner like Defendant can use its source code to commandeer the user's computing device, causing the device to re-direct contemporaneously and invisibly the users' communications to third parties.

**D. Defendant Disclosed its Patients' Private Information to unauthorized Third Parties via Tracking Tools on its Website**

51.     Without its patients' consent, Defendant has effectively used its source code to commandeer and "bug" or "tap" its patients' computing devices, thereby allowing Facebook and other third parties to listen in on and intercept all their communications with Defendant, including Private Information.

52.     While seeking and using Defendant's services as a pharmacy and trusted healthcare provider, patients communicated their Private Information via the Website in relation to and in order to obtain medical care and treatment from Defendant.

53.     Based on this relationship alone, patients had a reasonable expectation of privacy when using the Website, and this is further supported by the fact they were not aware that their Private Information would be shared with third parties as it was communicated to Defendant, and Defendant did not disclose this fact.

54.     Patients never consented, agreed, authorized, or otherwise permitted Defendant to disclose their Private Information to third parties, nor did they intend for anyone other than Defendant to be a party to their communications (many of them highly sensitive and confidential).

55.     Importantly, the Private Information Defendant's Tracking Tools sent to third parties included personally identifying information that allowed those third parties to connect the Private Information to a specific patient. Information sent to Facebook was sent alongside the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

patients' Facebook ID (c_user cookie or "FID"), thereby allowing individual patients' communications with Defendant, and the Private Information contained in those communications, to be linked to their unique Facebook accounts and therefore their identity.[13]

56.     A user's FID is linked to their Facebook profile, which generally contains a wide range of demographics and other information about the user, including location, pictures, personal interests, work history, relationship status, and other details. Because the user's Facebook ID uniquely identifies an individual's Facebook account, Facebook—or any ordinary person—can easily use the Facebook ID to locate, access, and view the user's corresponding Facebook profile quickly and easily.

57.     Similarly, Google users who are logged-in to their Google accounts also have an identifier that is stored in Google's logs. Google logs a user's browsing activities on non-Google websites and uses this data for serving personalized ads.

58.     By installing and implementing the Tracking Tools, Defendant caused patients communications to be intercepted by and/or disclosed to Facebook and exploited for marketing.

59.     As explained below, these unlawful transmissions are initiated by Defendant's source code concurrent with communications made via certain webpages.

**E.  Defendant's Tracking Tools Disseminate Patient Information Via Its Website**

60.     The images below illustrate the point. When a patient used the Website to search for their specific prescription medication, "Cabergoline," the Website delivers information including "Pricing" and "Drug Information." Patients are encouraged to communicate additional information via the filters and drop-down tabs in the left menu, including whether they are seeking

---

[13] Defendant's Website track and transmit data via first-party and third-party cookies. The c_user cookie or FID is a type of third-party cookie assigned to each person who has a Facebook account, and it is comprised by a unique and persistent set of numbers.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    the brand-name or generic version of the drug, the form (such as tablet or liquid), the dosage and

2    strength of the medication, packing, and quantity.

3


*Figure 2.*

61.      Unbeknownst to ordinary patients, this webpage—which is undoubtedly used to communicate Private Information for the purpose of obtaining health care—contained Defendant's Tracking Tools and sent every communication made via the webpage to Facebook. It also logs and transmits instantaneously the patient's location alongside their Private Information.

62.      The image below, which is a screenshot taken from a network traffic report, confirms that Facebook received patients' Private Information, including the names of their prescription medications, when patients used the Website.

CLASS ACTION COMPLAINT - 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

×   Headers   **Payload**   Preview   Response   Initiator   Timing   Cookies

▼ Query String Parameters    view source    view URL-encoded

id: 707542376568799

ev: SubscribedButtonClick

dl: https://www.costco.com/cmpps?drugIdentifierParam=55548097533&drugNameParam=Cabergoline

rl: https://www.costco.com/cmpps?drugIdentifierParam=55548097533&drugNameParam=Cabergoline

if: false

ts: 1689187321863

cd[buttonFeatures]: {"classList":"btn-link location-link","destination":"","id":"","imageUrl":"","innerTe

xt":"View Locations","numChildButtons":0,"tag":"button","type":null,"name":"","value":""}

cd[buttonText]: View Locations

cd[formFeatures]: []

cd[pageFeatures]: {"title":"\n   \t\n   \t\t\Cabergoline - \n   \t\Member Prescription Program Prices\n

"}

sw: 1680

sh: 1050

v: 2.9.111

r: stable

ec: 2

o: 1054

fbp: fb.1.1689014010015.1480975665

cs_est: true

it: 1689187207324

coo: false

dpo: LDU

dpoco: 0

dpost: 0

es: automatic

tm: 3

exp: a1

rqm: GET

*Figure 3.*

21

22

23

24

25

26

27

28

63.  As shown in Figure 3, when the user searched for their specific prescription medication (Cabergoline) via the Website, Facebook received that exact phrase.

64.  The first line of highlighted text, "id: 707542376568799" refers to Defendant's Pixel ID and confirms that it installed the Facebook Pixel into its Source Code on this webpage.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

65.    The second line of text, "ev: SubscribedButtonClick," identifies and categorizes which actions the user took on the Webpage ("ev:" is an abbreviation for event, and "SubscribedButtonClick" is the type of event). Thus, this identifies the user as having searched for the specific drug, "Cabergoline."

66.    The additional lines of highlighted text show Defendants disclosed to Facebook: (1) the fact that the user is seeking a particular prescription; (2) using search parameters for drug comparison pricing; (3) selecting the least expensive option through the Costco Member Prescription Program ("CMPP"), and (4) that they searched for specific locations close to them in order to acquire the particular medication.

67.    Finally, the highlighted text ("GET") demonstrates that Defendant's Pixel sent the user's communications, and the Private Information contained therein, alongside the user's Facebook ID (c_user ID), thereby allowing the user's communications and actions on the website to be linked to their specific Facebook profile.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992



*Figure 4. Screenshot of the user's network traffic depicting the user's URL Request headers associated with Defendant's Pixel ID 707542376568799.*

68.     The image demonstrates that the user's Facebook ID (highlighted as "c_user=" in the image above) was sent alongside the other data.[14]

69.     Defendant's pixel also tracks and records instances in which a user searches amongst various Medicare plans that the Defendant will accept to pay for Medicare Part D prescriptions. The user must visit a separate site, but the Defendant's pixel tracks the buttons the user selects to go to the next site and transmits that information to Facebook as exemplified below:

tm: 3
rqm: GET

*Figure 5. Screenshot take from the user's traffic report depicting the "Payload" and corresponding "Headers" associated with the user's online activity and communications to Defendant.*

---

[14] The user's Facebook ID is represented as the c_user ID highlight in the image below, and Plaintiffs has redacted the corresponding string of numbers to preserve the user's anonymity.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

70.     As with the previous example, the user's search parameters and filters are communicated to Facebook via Defendant's pixel, and their search for Medicare plans is recorded as a "SubscribedButtonClick" alongside the site they are taken to providing them with the best Costco Preferred Plans.[15]

71.     In each of the examples above, the user's website activity and the contents of the user's communications are sent to Facebook alongside their personally identifiable information in the form of their FID.

72.     At present, the full breadth of Defendant's tracking and data sharing practices is unclear, but other evidence suggests Defendant is using additional Tracking Tools to transmit its patients' Private Information to additional third parties.

F.      **Plaintiffs' Experience**

73.     Plaintiff Matt Groves is, and at all relevant times was, a resident of Lockeford and a citizen of the state of California. Plaintiff Groves has been a customer of Costco for more than twenty years and has used Costco's online pharmacy for approximately 2-3 years before switching to another pharmacy in early 2023 due to a change in health insurers. During the period in which he was a Costco Pharmacy customer, Plaintiff Groves regularly used the Costco pharmacy website to check the status of medications, and/or refill medications. Plaintiff Groves communicated personal identifying information and personal health information to Costco via its website. Plaintiff Groves did not authorize Costco to share his information with any social media company, including, but not limited to Facebook. Plaintiff Groves has a Facebook account and generally keeps his phone logged in to his Facebook account.

---

[15] In addition to protecting information about health conditions, HIPAA also covers health care plans and protects information regarding the payment of medical bills. 45 C.F.R. §164.501.

CLASS ACTION COMPLAINT - 20

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

74.     Plaintiff Vern Deochoa ("Deochoa") is, and at all relevant times was, a resident of Fresno, California and a citizen of the state of California. Plaintiff Deochoa has been a customer of Costco for approximately fifteen years and has used Costco's online pharmacy for approximately six years. Plaintiff Deochoa regularly uses the Costco pharmacy website as well as the general Costco website, both to shop for products, check the status of medications, and/or refill medications. Plaintiff Deochoa communicated personal identifying information and personal health information to Costco via its website. Plaintiff Deochoa did not authorize Costco to share his information with any social media company, including, but not limited to Facebook. Plaintiff Deochoa has a Facebook account and generally keeps his computer logged in to his Facebook account.

75.     Deochoa and Groves (collectively "Plaintiffs") had a reasonable expectation, at all times material hereto, that any and all communications that they had with Defendant and its agents online were entirely private and confidential with respect to their PHI and PII – Private Information – and that Defendant would maintain its confidentiality and privacy and not share such information with third parties absent consent.

76.     As a result of Plaintiffs' use of the Website, and pursuant to the systematic process described in this Complaint, unauthorized third parties received Plaintiffs' Private Information, including the medical information they submitted via the Website.

77.     Defendant intercepted or assisted these interceptions without Plaintiffs' knowledge, consent, or express written authorization. By failing to receive the requisite consent, Defendant breached confidentiality and unlawfully disclosed Plaintiffs' Private Information.

78.     As Defendant's patients, Plaintiffs reasonably expected that their online communications with Defendant were solely between them and Defendant and that these

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

communications would not be transmitted to or disclosed to a third party. But for their status as Defendant's patient, Plaintiffs would not have disclosed their Private Information to Defendant.

79.     During their time as patients, Plaintiffs never consented to the use of their Private Information by third parties or to Defendant enabling third parties, including Facebook, to access or interpret such information.

80.     During the same transmissions, the Tracking Tools routinely provide third parties with patients' FIDs, IP addresses, and/or device IDs or other information they input into Defendant's Website, like their home address, zip code, or phone number. This is precisely the type of information that HIPAA requires healthcare providers to anonymize to protect the privacy of patients.

81.     After intercepting and collecting this information, Facebook processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences. If the Website visitor is also a Facebook user, Facebook will associate the information that it collects from the visitor with a Facebook ID that identifies their name and Facebook profile, i.e., their real-world identity. A user's Facebook Profile ID is linked to their Facebook profile, which generally contains a wide range of demographics and other information about the user, including pictures, personal interests, work history, relationship status, and other details. Because the user's Facebook Profile ID uniquely identifies an individual's Facebook account, Meta—or any ordinary person—can easily use the Facebook Profile ID to locate, access, and view quickly and easily the user's corresponding Facebook profile.

82.     Upon information and belief, as a "redundant" measure to ensure patients Private Information was successfully transmitted to unauthorized third parties and exploited for marketing purposes, Defendant implemented server-based workarounds like Conversions API, which

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

transmit Private Information from electronic storage on Defendant's server directly to Meta's server; i.e. the Private Information was transmitted regardless of patients' browser settings.

83.     Patients suffered injuries in the form of (i) invasion of privacy; (ii) diminution of value of their Private Information; (iii) statutory damages; (iv) the continued and ongoing risk to their Private Information; and (v) the continued and ongoing risk of harassment, spam, and targeted advertisements specific to their medical conditions and other confidential information communicated to Defendant via the Website.

84.     Plaintiffs have a continuing interest in ensuring that future communications with Defendant are protected and safeguarded from future unauthorized disclosure.

## G. Defendant's Conduct Is Unlawful and Violated Industry Norms

### i. Defendant Violated HIPAA Standards

85.     Under Federal Law, a healthcare provider may not disclose personally identifiable, non-public medical information about a patient, a potential patient, or household member of a patient for marketing purposes without the patients' express written authorization.[16]

86.     The HIPAA Privacy Rule, located at 45 CFR Part 160 and Subparts A and E of Part 164, "establishes national standards to protect individuals' medical records and other individually identifiable health information (collectively defined as 'protected health information') and applies to health plans, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically."[17]

87.     The Privacy Rule broadly defines "protected health information" ("PHI") as individually identifiable health information ("IIHI") that is "transmitted by electronic media;

---

[16] HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502; 164.508(a)(3), 164.514(b)(2)(i).

[17] HHS.gov, HIPAA For Professionals (last visited October 12, 2023), https://www.hhs.gov/hipaa/forprofessionals/privacy/index.html.

CLASS ACTION COMPLAINT - 23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

maintained in electronic media; or transmitted or maintained in any other form or medium." 45 C.F.R. § 160.103.

88.     IIHI is defined as "a subset of health information, including demographic information collected from an individual" that is: (1) "created or received by a health care provider, health plan, employer, or health care clearinghouse"; (2) "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual"; and (3) either (a) "identifies the individual" or (b) "[w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103.

89.     Under the HIPPA de-identification rule, "health information is not individually identifiable only if": (1) an expert "determines that the risk is very small that the information could be used, alone or in combination with other reasonably available information, by an anticipated recipient to identify an individual who is a subject of the information" and "documents the methods and results of the analysis that justify such determination'"; or (2) "the following identifiers of the individual or of relatives, employers, or household members of the individual are removed;

        a.   Names;

        ***

        H.   Medical record numbers;

        ***

        J.   Account numbers;

        ***

        M.   Device identifiers and serial numbers;

        N.   Web Universal Resource Locators (URLs);

        O.   Internet Protocol (IP) address numbers; … and

        R.   Any other unique identifying number, characteristic, or code…;and"

The covered entity must not "have actual knowledge that the information could be used alone or in combination with other information to identify an individual

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   who is a subject of the information."

2   45 C.F.R. § 160.514.

3   90.    The HIPAA Privacy Rule requires any "covered entity"—which includes

4   pharmacies—to maintain appropriate safeguards to protect the privacy of protected health

5   information and sets limits and conditions on the uses and disclosures that may be made of

6   protected health information without authorization. 45 C.F.R. §§ 160.103, 164.502.

7   91.    An individual or corporation violates the HIPAA Privacy Rule if it knowingly and

8   in violation of 42 U.S.C. §§ 1320d-1320d-9 ("Part C"): "(1) uses or causes to be used a unique

9   health identifier; [or] (2) obtains individually identifiable health information relating to an

10  individual." The statute states that a "person … shall be considered to have obtained or disclosed

11  individually identifiable health information in violation of [Part C] if the information is maintained

12  by a covered entity … and the individual obtained or disclosed such information without

13  authorization." 42 U.S.C. § 1320d-6.

14  92.    The criminal and civil penalties imposed by 42 U.S.C. § 1320d-6 apply directly to

15  Defendant when it is knowingly disclosing individually identifiable health information relating to

16  an individual, as those terms are defined under HIPAA.

17  93.    Violation of 42 U.S.C. § 1320d-6 is subject to criminal penalties. 42 U.S.C.

18  § 1320d-6(b). There is a penalty enhancement where "the offense is committed with intent to sell,

19  transfer, or use individually identifiable health information for commercial advantage, personal

20  gain, or malicious harm." In such cases, the entity that knowingly obtains individually identifiable

21  health information relating to an individual shall "be fined not more than $250,000, imprisoned

22  not more than 10 years, or both."

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

94.     In Guidance regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act Privacy Rule, the HHS instructs:

> Identifying information alone, such as personal names, residential addresses, or phone numbers, would not necessarily be designated as PHI. For instance, if such information was reported as part of a publicly accessible data source, such as a phone book, then this information would not be PHI because it is not related to health data… If such information was listed with health condition, health care provision, or payment data, such as an indication that the individual was treated at a certain clinic, then this information would be PHI.[18]

95.     In its guidance for Marketing, the HHS further instructs:

> The HIPAA Privacy Rule gives individuals important controls over whether and how their protected health information is used and disclosed for marketing purposes. With limited exceptions, the Rule requires an individual's written authorization before a use or disclosure of their or her protected health information can be made for marketing. … Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes. Moreover, *covered entities may not sell lists of patients to third parties without obtaining authorization from each person on the list*. (Emphasis added).[19]

96.     As alleged above, there is an HHS Bulletin that highlights the obligations of "regulated entities," which are HIPAA-covered entities and business associates, when using tracking technologies.[20]

97.     The Bulletin expressly provides that "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules."

98.     Defendant's actions violated HIPAA Rules.

## H.  Patients' Expectation of Privacy

---

[18]https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/De-identification/hhs_deid_guidance.pdf (last visited October 11, 2023).

[19]https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/marketing.pdf (last visited Oct. 12, 2023)

[20] *See* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

99.     Plaintiffs and Class Members were aware of Defendant's duty of confidentiality when they sought medical services from Defendant.

100.     Indeed, at all times when patients provided their Private Information to Defendant, they had a reasonable expectation that the information would remain private and that Defendant would not share the Private Information with third parties for a commercial purpose (such as marketing), unrelated to patient care.

101.     Plaintiffs and Class Members would not have used the Website, would not have provided their Private Information to Defendant, and would not have paid for Defendant's healthcare services, or would have paid less for them, had they known that Defendant would disclose their Private Information to third parties.

**I.  IP Addresses Are PII**

102.     Defendant also disclosed and otherwise assisted third parties with intercepting patients' device IP addresses.

103.     An IP address is a unique number that identifies the address of a particular device connected to the Internet, which is used to identify and route communications on the Internet.

104.     IP addresses of individual Internet users are used by Internet service providers, websites, and third-party tracking companies to facilitate and track Internet communications.

105.     For example, Facebook tracks every IP address ever associated with a Facebook user, and it uses that information to target individual homes and their occupants with advertising.

106.     Under HIPAA, an IP address is considered PII:

- HIPAA defines PII to include "any unique identifying number, characteristic or code" and specifically lists the example of IP addresses. *See* 45 C.F.R. § 164.514 (2).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

- HIPAA further declares information as personally identifiable where the covered entity has "actual knowledge that the information to identify an individual who is a subject of the information." 45 C.F.R. § 164.514(2)(ii); *See* also, 45 C.F.R. § 164.514(b)(2)(i)(O).

107. Consequently, by disclosing IP addresses, Defendant's business practices violated HIPAA and industry privacy standards.

**J.  Defendant Was Enriched and Benefitted from the Use of The Tracking Tools and Unauthorized Disclosures**

108. The primary motivation and a determining factor in Defendant's interception and disclosure of Plaintiffs' and Class Members' Private Information was to commit criminal and tortious acts in violation of federal and state laws as alleged herein, namely, the use of patient data for advertising in the absence of express written consent. Defendant's further use of the Private Information after the initial interception and disclosure for marketing and revenue generation was in violation of HIPAA and an invasion of privacy. In exchange for disclosing the Private Information of its patients, Defendant is compensated in the form of enhanced advertising services and more cost-efficient marketing on its platform.

109. Retargeting is a form of online marketing that targets users with ads based on their previous internet communications and interactions.

110. Upon information and belief, as part of its marketing campaign, Defendant re-targeted patients and potential patients to get more patients to use its services. Defendant did so through use of the intercepted patient data it obtained, procured, and/or disclosed in the absence of express written consent.

111. By utilizing the Tracking Tools, the cost of advertising and retargeting was reduced through further use of the unlawfully intercepted and disclosed Private Information, thereby

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   benefitting Defendant while invading the privacy of Plaintiffs and Class Members and violating

2   their rights under federal and California law.

3   **K.  Patients' Private Information Had Financial Value**

4   112.   Patients' Private Information has economic value. Facebook regularly uses data

5   that it acquires to create Core and Custom Audiences, as well as Lookalike Audiences and then

6   sells that information to advertising clients. Google has recognized the value of user data and has

7   even instituted a pilot program in which it pays users $3 per week to track them online.

8

9   113.   Data harvesting is one of the fastest growing industries in the country, and

10  consumer data is so valuable that it has been described as the "new oil." Conservative estimates

11  suggest that in 2018, Internet companies earned $202 per American user from mining and selling

12  data. That figure is only due to continuing to increase; estimates for 2022 are as high as $434 per

13  user, for a total of more than $200 billion industry wide.

14

15  114.   The value of health data in particular is well-known and has been reported on

16  extensively in the media. For example, Time Magazine published an article in 2017 titled "How

17  Your Medical Data Fuels a Hidden Multi-Billion Dollar Industry" in which it described the

18  extensive market for health data and observed that the market for information was both lucrative

19  and a significant risk to privacy.[21]

20  115.   Similarly, CNBC published an article in 2019 in which it observed that "[d]e-

21  identified patient data has become its own small economy: There's a whole market of brokers who

22  compile the data from providers and other health-care organizations and sell it to buyers."[22]

23

24

25

26  [21] *See* https://time.com/4588104/medical-data-industry/ (last visited October 10, 2023).

27  [22]   *See*   https://www.cnbc.com/2019/12/18/hospital-execs-say-theyre-flooded-with-requests-for-your-
    health-data.html (last visited October 10, 2023).

28

CLASS ACTION COMPLAINT - 29

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**TOLLING**

2      116.    Any applicable statute of limitations has been tolled by the "delayed discovery"

3   rule. Plaintiffs did not know (and had no way of knowing) that their Private Information was

4   intercepted and unlawfully disclosed to third parties because Defendant kept this information

5   secret, and the Tracking Tools were invisible.

6

7                        **CLASS ACTION ALLEGATIONS**

8      117.    Plaintiffs bring this action individually and on behalf of all other persons similarly

9   situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

10     118.    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

11
12          All individuals residing in the United States who are, or were, patients of Defendant
            or any of its affiliates, who used Defendant's Website and had their Private
            Information disclosed to a third party without authorization or consent.

13   In the alternative, Plaintiffs seek to represent a California Subclass defined as:

14
15          All individuals residing in California who are, or were, patients of Defendant or
            any of its affiliates, used Defendant's Website, and had their Private Information
16          disclosed to a third party without authorization or consent.

17   The Nationwide Class and California Class are collectively referred to as the "Class."

18     119.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries,

19   any entity in which Defendant has a controlling interest, any of Defendant's officers or directors,

20   any successor or assign, and any Judge who adjudicates this case, including their staff and

21   immediate family members.

22     120.    Plaintiffs reserve the right to modify or amend the definition of the proposed class

23   before the Court determines whether certification is appropriate.

24     121.    Numerosity, Fed R. Civ. P. 23(a)(1). The Class Members are so numerous that the

25   membership of all members is impracticable. Upon information and belief, there are hundreds of

26
27   thousands of individuals whose Private Information was improperly disclosed to third parties as a

28

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

result of Defendant's use of the Tracking Tools on its Website, and the Class is identifiable within Defendant's records.

122. <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3). Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

a. Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiffs and Class Members;

b. Whether Defendant had duties not to disclose the Private Information of Plaintiffs and Class Members to unauthorized third parties;

c. Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their Private Information would be disclosed to third parties;

d. Whether Defendant violated the law by failing to notify promptly Plaintiffs and Class Members that their Private Information had been compromised;

e. Whether Defendant adequately addressed and fixed the practices which permitted the disclosure of patient Private Information;

f. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiffs and Class Members;

g. Whether Defendant's conduct violated the Washington Consumer Protection Act RCW § 19.86.020;

h. Whether Defendant's conduct violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq*.;

i. Whether Defendant's conduct violated the California Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq*.;

CLASS ACTION COMPLAINT - 31

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

j.      Whether Defendant's conduct violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*;

k.      Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct; and

l.      Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of Defendant's disclosure of their Private Information.

123.    <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members because all had their Private Information compromised as a result of Defendant's incorporation of Tracking Tools, due to Defendant's misfeasance.

124.    <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

125.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3). Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require.

CLASS ACTION COMPLAINT - 32

Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

126.   <u>Policies Generally Applicable to the Class</u>. Fed. R. Civ. P. 23(b)(2). This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

127.   The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

128.    The litigation of the claims is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

129.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

130.    Unless a class-wide injunction is issued, Defendant may continue disclosing the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the practices complained of herein, and Defendant may continue to act unlawfully as set forth in this Complaint.

131.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

132.    <u>Issue Certification</u>, Fed. R. Civ. P. 23(c)(4). Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, the following:

a.      Whether Defendant owed a legal duty to not disclose Plaintiffs' and Class Members' Private Information;

b.      Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1      c.      Whether Defendant failed to comply with its own policies and applicable laws,

2 regulations, and industry standards relating to data security;

3      d.      Whether Defendant adequately and accurately informed Plaintiffs and Class

4 Members that their Private Information would be disclosed to third parties;

5      e.      Whether Defendant failed to implement and maintain reasonable security

6 procedures and practices appropriate to the nature and scope of the information disclosed to third

7 parties;

8      f.      Whether Class Members are entitled to actual, consequential, and/or nominal

9 damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

**COUNT I**
**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**RCW § 19.86.020**
**(On behalf of Plaintiffs and the Class)**

133.    Plaintiffs incorporate the prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

134.    This cause of action is brought pursuant to the Washington Consumer Protection Act ("WCPA"), RCW §19.86.020, which protects consumers from "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."

135.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of WCPA § 19.86.020 . The conduct alleged herein is a "business practice" within the meaning of WCPA § 19.86.020, and the deception occurred within Washington State.

136.    By serving as Plaintiffs' and Class Members' healthcare provider through their pharmacy, Defendant had a duty to protect Plaintiffs' and Class Members' Private Information from unlawful disclosure.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

137.     Plaintiffs and the Class Members paid for or otherwise availed themselves and received services from Defendant, for the purpose of filling prescriptions and receiving pharmacy services.

138.     Defendant engaged in the conduct alleged herein, entering into transactions intended to result, and which did result, in the provision of health care treatment and pharmacy services to Plaintiffs and Class Members.

139.     Defendant's acts, practices, and omissions were done in the course of offering health care treatment, services, and care throughout the state of Washington and the United States.

140.     The unfair and deceptive acts and practices of Defendant alleged herein, and in particular the decisions regarding the Tracking Tools, emanated and arose within the state of Washington, within the scope of WCPA § 19.86.020.

141.     Defendant, operating in and out of Washington, engaged in unfair and deceptive trade acts or practices in the conduct of trade or commerce, in violation of WCPA § 19.86.020, including but not limited to the following: (a) knowingly promising to protect Plaintiffs' and Class Members' Private Information, (b) knowingly and improperly storing, possessing, using, and/or procuring the interception of, Plaintiffs' and Class Members' Private Information; and (c) knowingly disclosing Plaintiffs' and Class Members' Private Information to third parties.

142.     Defendant committed these acts while concurrently representing that it would protect and not unlawfully disclose Plaintiffs' and Class Members' Private Information unless under a legal obligation to do so.

143.     These unfair and deceptive acts and practices violated duties imposed by laws, including by not limited to HIPAA, the Washington Privacy Act, the Washington Cybercrime Act,

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

the Washington Uniform Health Care Information Act, statutes regarding the confidentiality of medical records, and WCPA § 19.86.020.

144.    Defendant knew or should have known that its Website and the Tracking Tools thereon was unlawfully wiretapping, intercepting, and disclosing Plaintiffs' and Class Members' Private Information.

145.    Defendant's unfair conduct and business practices affect the public interest. As described herein, a person's medical information, including prescription drug information, is protected by HIPAA and Washington and California state law. The public has the right to control the dissemination and disclosure of private health information and not have its trust violated by the surreptitious interception and disclosure of that information.

146.    Plaintiffs have standing to pursue this claim because as a direct and proximate result of Defendant's violations of WCPA § 19.86.020, Plaintiffs and Class Members have been injured by a violation of WCPA § 19.86.020 and bring this action to obtain a declaratory judgment that Defendant's acts or practices violate WCPA § 19.86.020.

147.    Plaintiffs also have standing to pursue this claim because, as a direct result of Defendant's knowing violation of WCPA § 19.86.020, Plaintiffs and Class Members have lost money or property in the form monies paid for Defendant's services, diminution in value of their Private Information, as well as loss of the benefit of their bargain with Defendant.

148.    Plaintiffs and Class Members are entitled to injunctive relief to protect them from the substantial and imminent risk of future loss of Private Information, including, but not limited to: (a) ordering that Defendant immediately remove any pixel, web beacon, cookie, or other tracking technology that causes the disclosure of Private Information to third parties without consent; (b) ordering that Defendant engage third-party security auditors and internal personnel to

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

ensure Plaintiffs' and Class Members' Private Information is no longer subject to the unlawful practices described in this Complaint; (c) ordering that Defendant purge, delete, and destroy Private Information not necessary for its provisions of services in a reasonably secure manner; (d) ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to properly handle Private Information provided via Defendant's Website; (e) ordering Defendant to meaningfully educate individuals about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps victims should take to protect themselves.

149.    Plaintiffs bring this action individually and on behalf of Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiff, Class Members, and the public from Defendant's unfair methods of competition and unfair, unconscionable, and unlawful practices. Defendant's wrongful conduct as alleged in this Class Action Complaint has had a widespread impact on the public at large.

150.    The above unfair, unconscionable, and unlawful practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Class Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

151.    Defendant's actions and inactions in engaging in the unfair and deceptive practices described herein were negligent, knowing and willful, or wanton and reckless.

152.    Plaintiffs and Class Members seek relief under WCPA § 19.86.020, including, but not limited to, a declaratory judgment that Defendant's actions and/or practices violate WCPA §

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

19.86.020; injunctive relief enjoining Defendant, their employees, parents, subsidiaries, affiliates, executives, and agents from continuing to violate WCPA § 19.86.020as described above.

153.    Plaintiffs and Class Members are also entitled to recover treble actual damages, to recover the costs of this action (including reasonable attorneys' fees), and such other relief as the Court deems just and proper.

**COUNT II**
**VIOLATIONS OF THE WASHINGTON PRIVACY ACT ("WPA")**
**RCW § 9.73.030, et seq.**
**(On Behalf of Plaintiffs and the Class)**

154.    Plaintiffs incorporate the prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

155.    The Washington Privacy Act ("WPA") makes it "unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept or record any private communications transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication." RCW § 9.73.030 (1)(a).

156.    Consent under the WPA is only considered obtained where "one party has announced to all other parties engaged in the  communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted." RCW § 9.73.030(3).

157.    Specifically, Defendant transmitted Plaintiffs' and Class Members' names and FID to third parties like Facebook for targeted advertising and other commercial purposes, as described herein.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

158.    Defendant's use of Plaintiffs' and Class Members' names and Private Information did not serve any public interest.

159.    The unlawful tracking of Plaintiffs and Class Members, and disclosure of their names in connection with their Private Information, has caused Plaintiffs and Class Members to suffer damages. This includes damage to the value of their information, which Defendant appropriated for its own enrichment. Plaintiffs and Class Members have also suffered nominal and actual damages as previously alleged.

160.    Defendant failed to protect Plaintiffs' and Class Members' Private Information and acted knowingly when it installed the Pixel onto its Website because the purpose of the Pixel is to track and disseminate individual's communications with the Website for the purpose of marketing and advertising.

161.    Because Defendant intentionally and willfully incorporated Tracking Tools into its Website and encouraged patients to use that Website for healthcare purposes, Defendant had notice and knew that its practices would cause injury to Plaintiffs and Class Members.

162.    Plaintiffs, individually and on behalf of Class Members, seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, loss of time and opportunity costs, plus prejudgment interest, and costs. Alternatively, Plaintiffs and Class Members are entitled to nominal damages for their injuries.

163.    Plaintiffs and Class Members are entitled to exemplary statutory damages because of Defendant's knowing violations of their statutory rights to privacy.

164.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their Private Information is still maintained by Defendant and still in the possession of Facebook and other third parties and the wrongful disclosure of the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

information cannot be undone.

165.     Plaintiffs and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not undo Defendant's disclosure of the information to Facebook who on information and belief continues to possess and utilize that information.

166.     Plaintiff, on behalf of herself and Class Members, further seeks injunctive relief to enjoin Defendant from further intruding into Plaintiffs' and Class Members' statutory privacy interests.

## COUNT III
### VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA")
### 18 U.S.C. § 2511(1) *et seq.*
### UNAUTHORIZED INTERCEPTION, USE, AND DISCLOSURE
### (On Behalf of Plaintiffs and the Class)

167.     Plaintiffs incorporate the prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

168.     The ECPA protects both sending and receipt of communications.

169.     18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

170.     The transmissions of Plaintiffs' Private Information to Defendant via Defendant's Website qualifies as a "communication" under the ECPA's definition in 18 U.S.C. § 2510(12).

171.     The transmissions of Plaintiffs' Private Information to medical professionals qualifies as a "communication" under the ECPA's definition in 18 U.S.C. § 2510(2).

172.     **Electronic Communications**. The transmission of Private Information between Plaintiffs and Class Members and Defendant via its Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some]

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo optical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

173.    **Content.** The ECPA defines content, when used with respect to electronic communications, to "include[] *any* information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8) (emphasis added).

174.    **Interception.** The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents … include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

175.    **Electronic, Mechanical, or Other Device**. The ECPA defines "electronic, mechanical, or other device" as "any device … which can be used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

a.   Plaintiffs' and Class Members' browsers;

b.   Plaintiffs' and Class Members' computing devices;

c.   Defendant's webservers; and

d.   The Tracking Tools deployed by Defendant to effectuate the sending and acquisition of patient communications

176.    Whenever Plaintiffs and Class Members interacted with Defendant's Website, Defendant, through the Tracking Tools embedded and operating on its Website, contemporaneously and intentionally disclosed, and endeavored to disclose the contents of Plaintiffs' and Class Members' electronic communications to third parties without authorization

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

or consent, and knowing or having reason to know that the electronic communications were obtained in violation of the ECPA. 18 U.S.C. § 2511(1)(c).

177. Whenever Plaintiffs and Class Members interacted with Defendant's Website, Defendant, through the Tracking Tools embedded and operating on its Website, contemporaneously and intentionally used, and endeavored to use the contents of Plaintiffs' and Class Members' electronic communications, for purposes other than providing health care services to Plaintiffs and Class Members without authorization or consent, and knowing or having reason to know that the electronic communications were obtained in violation of the ECPA. 18 U.S.C. § 2511(1)(d).

178. Whenever Plaintiffs and Class Members interacted with Defendant's Website, Defendant, through the Tracking Tools it embedded and operated on its Website, contemporaneously and intentionally redirected the contents of Plaintiffs' and Class Members' electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication.

179. Defendant's intercepted communications include, but are not limited to, the contents of communications to/from Plaintiffs' and Class Members' regarding PII and PHI, treatment, medication, and scheduling.

180. By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiffs and Class Members to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

181.    By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiffs and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

182.    Defendant intentionally used the wire or electronic communications to increase its profit margins. Defendant specifically used the Tracking Tools to track and utilize Plaintiffs' and Class Members' PII and PHI for financial gain.

183.    Defendant was not acting under color of law to intercept Plaintiffs' and Class Members' wire or electronic communication.

184.    Patients did not authorize Defendant to acquire the content of their communications for purposes of invading their privacy and exploiting their Private Information for marketing purposes via the Tracking Tools.

185.    Any purported consent that Defendant received from Plaintiffs and Class Members was not valid.

186.    **Unauthorized Purpose**. Defendant intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, violations of HIPAA, the WCPA, the UHCIA, CIPA, CMIA, UCL, and invasion of privacy, among others.

187.    The ECPA provides that a "party to the communication" may be liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C § 2511(2)(d).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

188.    Defendant is a "party to the communication" with respect to patient communications. However, Defendant's simultaneous, unknown duplication, forwarding, and interception of Plaintiffs' and Class Members' Private Information does not qualify for the party exemption.

189.    Defendant's acquisition of patient communications that were used and disclosed to unauthorized third parties was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and Washington, including.

    a.  Criminal violation of HIPAA, 42 U.S.C. § 1320d-6;

    b.  Violation of Washington's Cybercrime Act, RCW § 9A.90;

    c.  Violation of Washington's Consumer Protection Act ("WCPA"), RCW § 19.86.020;

    d.  Violation of Washington's Uniform Health Care Information Act ("UHCIA"), RCW § 70.02.020;

    e.  Violation of Washington's Privacy Act, RCW § 9.73.030;

    f.  Violation of the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*;

    g.  Violation of the California Medical Information Act, Cal. Civ. Code § 56, *et seq.*; and

    h.  Violation of the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200 *et seq.*

190.    Under 42 U.S.C. § 1320d-6, it is a criminal violation for a person to "use[] or cause[] to be used a unique health identifier" or to "disclose[] individually identifiable health information to another person … without authorization" from the patient.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

191.    The penalty for violation is enhanced where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm." 42 U.S.C. § 1320d-6.

192.    Defendant's conduct violated 42 U.S.C. § 1320d-6 in that it:

    a.    Used and caused to be used cookie identifiers associated with specific patients without patient authorization; and

    b.    Disclosed individually identifiable health information to unauthorized third parties without patient authorization.

193.    Defendant's conduct would be subject to the enhanced provisions of 42 U.S.C. § 1320d-6 because Defendant's use of Tracking Tools was for Defendant's commercial advantage to increase revenue from existing patients and gain new patients.

194.    The Tracking Tools, which constitute programs, commanded Plaintiffs' and Class Members' computing devices to remove and redirect their data and the content of their communications with Defendant to unauthorized third parties.

195.    Defendant knew or had reason to know that the Tracking Tools would command Plaintiffs' and Class Members' computing devices to remove and redirect their data and the content of their communications with Defendant to unauthorized third parties.

196.    Defendant is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it was a participant in Plaintiffs' and Class Members' communications via the Website, and that's because Defendant used its participation in the communications to improperly share Plaintiffs' and Class Members' Private Information with third-parties that did not participate in these communications (such as Facebook), that Plaintiffs and Class Members did not know were

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

receiving their individually-identifiable patient health information, and that Plaintiffs and Class Members did not consent to receive this information.

197.    Defendant accessed, obtained, and disclosed Plaintiffs' and Class Members' Private Information for the purpose of committing the crimes and torts described herein because it would not have been able to obtain the information or the marketing services if it had complied with the law.

198.    As such, Defendants cannot viably claim any exception to ECPA liability.

199.    Plaintiffs and Class Members have suffered damages as a direct and proximate result of Defendant's invasion of privacy in that:

    a.  Learning that Defendant has intruded upon, intercepted, transmitted, shared, and used their individually identifiable patient health information (including information about their medical symptoms, conditions, and concerns, medical appointments, healthcare providers and locations, medications and treatments, and health insurance and medical bills) for commercial purposes has caused Plaintiffs and the Class Members to suffer emotional distress;

    b.  Defendant received substantial financial benefits from its use of Plaintiffs' and Class Members' individually identifiable patient health information without providing any value or benefit to Plaintiffs or the Class Members;

    c.  Defendant received substantial, quantifiable value from its use of Plaintiffs' and Class Members' individually identifiable patient health information, such as understanding how people use its website and determining what ads people see on its website, without providing any value or benefit to Plaintiffs or the Class Members;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

d. Defendant has failed to provide Plaintiffs and the Class Members with the full value of the medical services for which they paid, which included a duty to maintain the confidentiality of their patient information; and

e. The diminution in value of Plaintiffs' and Class Members' PII and PHI and the loss of privacy due to Defendant making sensitive and confidential information, such as patient status, test results, and appointments that Plaintiffs and Class Members intended to remain private no longer private.

200. As a result of Defendant's violation of the ECPA, Plaintiffs and Class Members entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

## COUNT IV
### BREACH OF IMPLIED CONTRACT
#### (on behalf of Plaintiffs and the Class)

201. Plaintiffs incorporate the prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

202. As a condition of utilizing Defendant's Website and receiving services from Defendant's healthcare facilities and professionals, Plaintiffs and the Class Members provided their Private Information and compensation for their medical care.

203. When Plaintiffs and Class Members provided their Private Information to Defendant, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Private Information without consent.

204. Plaintiffs and Class Members would not have entrusted Defendant with their Private Information in the absence of an implied contract between them and Defendant obligating Defendant to not disclose Private Information without consent.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

205.    Plaintiffs and Class Members would not have retained Defendant to provide healthcare services in the absence of an implied contract between them and Defendant obligating Defendant to not disclose Private Information without consent.

206.    Defendant breached these implied contracts by disclosing Plaintiffs' and Class Members' Private Information without consent to unauthorized third parties.

207.    As a direct and proximate result of Defendant's breaches of these implied contracts, Plaintiffs and Class Members sustained damages as alleged herein, including but not limited to the loss of the benefit of their bargain and diminution in value of Private Information.

208.    Plaintiffs and Class Members are entitled to compensatory and consequential damages as a result of Defendant's breach of implied contract.

<u>COUNT V</u>
**BREACH OF FIDUCIARY DUTY/CONFIDENTIALITY**
**(On Behalf of Plaintiffs and the Class)**

209.    Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

210.    Medical providers have a duty to their patients to keep non-public medical information completely confidential, and to safeguard sensitive personal and medical information. This duty arises from the implied covenant of trust and confidence that is inherent in the physician-patient relationship.

211.    Plaintiffs and Class Members had reasonable expectations of privacy in their communications exchanged with Defendant, including communications exchanged on Defendant's Website.

212.    In light of the special relationship between Defendant and Plaintiffs and Class Members, whereby Defendant became a guardian of Plaintiffs' and Class Members' Private

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its patients, including Plaintiffs and Class Members: (1) for the safeguarding of Plaintiffs' and Class Members' Private Information; (2) to notify timely Plaintiffs and Class Members of disclosure of their Private Information to unauthorized third parties; and (3) to maintain complete and accurate records of what patient information (and where) Defendant did and does store and disclose.

213.    Contrary to its duties as a medical provider and its express and implied promises of confidentiality, Defendant installed its Tracking Tools to disclose and transmit to third parties Plaintiffs' and Class Members' communications with Defendant, including Private Information and the contents of such information.

214.    These disclosures were made for commercial purposes without Plaintiffs' or Class Members' knowledge, consent, or authorization, and were unprivileged.

215.    The unauthorized disclosures of Plaintiffs' and Class Members' Private Information were intentionally caused by Defendant's employees acting within the scope of their employment. Alternatively, the disclosures of Plaintiffs' and Class Members' Private Information occurred because of Defendant's negligent hiring or supervision of its employees, its failure to establish adequate policies and procedures to safeguard the confidentiality of patient information, or its failure to train its employees to properly discharge their duties under those policies and procedures.

216.    The third-party recipients included, but may not be limited to, Facebook. Such information was received by these third parties in a manner that allowed them to identify the Plaintiffs and the individual Class Members.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

217.   Defendant's breach of the common law implied covenant of trust and confidence is evidenced by its failure to comply with federal and state privacy regulations, including:

a.   By failing to ensure the confidentiality and integrity of electronic PHI Defendant created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

b.   By failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

c.   By failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(4);

d.   By failing to obtain satisfactory assurances, including in writing, that its business associates and/or subcontractors would appropriately safeguard Plaintiffs' and Class Members PHI;

e.   By failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.   By failing to implement technical security measures to guard against unauthorized access to electronic protected health information that is being transmitted over an electronic communications network in violation of 45 C.F.R. § 164.312(e)(1);

g.   By impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, et seq.;

h.   By failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5);

i.   By failing to keep Private Information confidential as required by N.Y. C.P.L.R. 4504;

j.   By failing to keep Private Information confidential as required by N.Y. Pub. Health Law § 2803(3)(f); and

k.   By otherwise failing to safeguard Plaintiffs' and Class Members' Private Information.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

218.    The harm arising from a breach of provider-patient confidentiality includes mental suffering due to the exposure of private information and erosion of the essential confidential relationship between the healthcare provider and the patient.

219.    As a direct and proximate cause of Defendant's unauthorized disclosures of patient personally identifiable, non-public medical information, and communications, Plaintiffs and Class members were damaged by Defendant's breach in that:

a.  Sensitive and confidential information that Plaintiffs and Class members intended to remain private is no longer private;

b.  Plaintiffs and Class members face ongoing harassment and embarrassment in the form of unwanted targeted advertisements;

c.   Defendant eroded the essential confidential nature of the provider-patient relationship;

d.  General damages for invasion of their rights in an amount to be determined by a jury;

e.  Nominal damages for each independent violation;

f.  Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge or informed consent and without compensation for such data;

g.  Plaintiffs and Class Members did not get the full value of the medical services for which they paid, which included Defendant's duty to maintain confidentiality;

h.  Defendant's actions diminished the value of Plaintiffs' and Class Members' Private Information; and

i.  Defendant's actions violated the property rights Plaintiffs and Class members have in their Private Information.

### COUNT VI
### UNJUST ENRICHMENT
### (On behalf of Plaintiffs and the Class)

220.    Plaintiffs incorporate the prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

221. Defendant benefits from the use of Plaintiffs' and Class Members' Private Information and unjustly retained those benefits at their expense.

222. Plaintiffs and Class Members conferred a benefit upon Defendant in the form of Private Information that Defendant collected from Plaintiffs and Class Members, without authorization and proper compensation to exceed the limited authorization and access to that information which was given to Defendant.

223. Defendant exceeded any authorization given and instead consciously disclosed and used this information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation.

224. Defendant unjustly retained those benefits at the expense of Plaintiffs and Class Members because Defendant's conduct damaged Plaintiffs and Class Members, all without providing any commensurate compensation to Plaintiffs and Class Members.

225. The benefit that Defendant derived from Plaintiffs and Class Members was not offered by Plaintiffs and Class Members gratuitously and rightly belongs to Plaintiffs and Class Members. It would be against equity and good conscience for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

226. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

<u>**COUNT VII**</u>
**NEGLIGENCE**
**(On behalf of Plaintiffs and the Class)**

227. Plaintiffs incorporate the prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

228.  Defendant owed Plaintiffs and Class Members a duty to keep their Private Information completely confidential, and to safeguard sensitive personal and medical information.

229.  Plaintiffs and Class Members had reasonable expectations of privacy in their communications exchanged with Defendant, including communications exchanged on Defendant's Website.

230.  Contrary to its duties as a medical provider and its express promises of confidentiality, Defendant installed its Tracking Tools to disclose and transmit to third parties Plaintiffs' and Class Members' communications with Defendant, including Private Information and the contents of such information.

231.  These disclosures were made without Plaintiffs' or Class Members' knowledge, consent, or authorization, and were unprivileged.

232.  The third-party recipients included, but may not be limited to, Facebook.

233.  As a direct and proximate cause of Defendant's unauthorized disclosures of patient personally identifiable, non-public medical information, and communications, Plaintiffs and Class members were damaged by Defendant's breach in that:

   a.  Sensitive and confidential information that Plaintiffs and Class members intended to remain private is no longer private;

   b.  Plaintiffs and Class members face ongoing harassment and embarrassment in the form of unwanted targeted advertisements;

   c.  Defendant eroded the essential confidential nature of the provider-patient relationship;

   d.  General damages for invasion of their rights in an amount to be determined by a jury;

   e.  Nominal damages for each independent violation;

   f.  Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge or informed consent and without compensation for such data;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

g.   Plaintiffs and Class Members did not get the full value of the medical services for which they paid, which included Defendant's duty to maintain confidentiality;

h.   Defendant's actions diminished the value of Plaintiffs' and Class Members' Private Information; and

i.   Defendant's actions violated the property rights Plaintiffs and Class Members have in their Private Information.

## COUNT VIII
### VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")
**Cal. Penal Code § 630, *et seq***
**(on behalf of Plaintiffs and the California Class)**

234.   Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein and bring this count individually and on behalf of the proposed California Class.

235.   The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.  The Act begins with its statement of purpose.

The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

236.   California Penal Code § 631(a) provides, in pertinent part (emphasis added):

Any person who, by means of any machine, instrument, or contrivance, or in any other manner … willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or **who aids, agrees with, employs, or conspires** with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

237.    Under CIPA, a defendant must show it had the consent of <u>all</u> parties to a communication.

238.    At all relevant times, Defendant aided, employed, agreed with, and conspired with unauthorized third parties to track and intercept Plaintiffs' and Class Members' communications made via the Website. These communications were transmitted to and intercepted by a third party during the communications and without the knowledge, authorization, or consent of Plaintiffs and Class Members.

239.    Defendant intentionally inserted an electronic listening device onto Plaintiffs' and Class Members' web browsers that, without the knowledge and consent of Plaintiffs and Class Members, tracked and transmitted the substance of their confidential communications with Defendants to a third party.

240.    Defendant willingly facilitated third parties' interception and collection of Plaintiffs' and Class Members' private medical information by embedding the Tracking Tools on its Website. Moreover, unlike past Facebook business tools such as the Facebook Like Button and older web beacons, Defendant has full control over the Pixel, including which webpages contain the pixel, what information is tracked and transmitted via the Pixel, and how events are categorized prior to their transmission.

241.    Defendant's Tracking Tools constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, these tools fall under the broad catch-all category of "any other manner."

242.    Defendant failed to disclose its use of the Tracking Tools to specifically track and automatically and simultaneously transmit Plaintiffs' and Class Members' communications with Defendant to undisclosed third parties.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

243.    The Private Information that Defendant transmitted via the Tracking Tools, such as specific prescriptions, as well as names, IP addresses, home addresses, FIDs, or other identifying information, constitutes information about Plaintiffs' and Class Members' past, present, or future health or health care and therefore constitutes protected health information.

244.    The Tracking Tools are designed such that they transmit each of the actions users take on the Website to a third party alongside and contemporaneously with the user initiating the communication. Thus, the communication is intercepted in transit to the intended recipient, Defendant, and before it reaches Defendant's server.

245.    As demonstrated above, Defendant violated CIPA by aiding and permitting third parties to intercept and receive its patients' online communications in real time through its Website. These interceptions occurred without Plaintiffs' and Class Members' consent, and unauthorized third parties (including but not limited to Facebook) would not have received the contents of these communications but for Defendant's actions and use of the Tracking Tools.

246.    By disclosing Plaintiffs' and Class Members' Private Information, Defendant violated Plaintiffs' and Class Members' statutorily protected right to privacy.

247.    As a result of the above violations and pursuant to CIPA Section 637.2, Defendant is liable to Plaintiffs and Class Members for treble actual damages related to their loss of privacy in an amount to be determined at trial or for statutory damages in the amount of $5,000 per violation. Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

248.    Under the statute, Defendant also is liable for reasonable attorney's fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**COUNT IX**
**VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL**
**INFORMATION ACT ("CMIA")**
**Cal. Civ. Code § 56, *et seq***
**(on behalf of Plaintiffs and the California Class)**

249.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein and bring this claim individually and on behalf of the proposed California Class.

250.    The California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, et seq ("CMIA") prohibits health care providers from disclosing medical information relating to their patients without a patient's authorization. Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care… regarding a patient's medical history, mental or physical condition, or treatment." 'Individually Identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual..." Cal. Civ. Code § 56.05.

251.    Defendant is a healthcare provider as defined by Cal. Civ. Code § 56.06.

252.    Plaintiffs and Class Members are patients of Defendant and, as a health care provider, Defendant has an ongoing obligation to comply with the CMIA's requirements with respect to Plaintiffs' and Class Members' confidential medical information.

253.    As set forth above, names, addresses, telephone numbers, email addresses, device identifiers, web URLs, IP addresses, and/or other characteristics that can uniquely identify specific patients are transmitted to unauthorized third parties in combination with patient prescription drug information and queries. This protected health information and personally identifiable information constitutes confidential information under the CMIA.

254.    Pursuant to the CMIA, the information communicated to Defendants and disclosed to third parties constitutes medical information because it is patient information derived from a

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

health care provider regarding patients' medical treatment and physical condition and is received by third parties in combination with individually identifying information. Cal. Civ. Code § 56.05(i).

255.    As set forth above, Facebook views, processes, and analyzes the confidential medical information it receives via the Facebook Tracking Pixel, conversions API, SDKs, and other Facebook business tools. It then uses the viewed confidential information to create Audiences for advertising and marketing purposes.

256.    Defendant failed to obtain Plaintiffs' and Class Members' authorization for their disclosure of medical information.

257.    Pursuant to CMIA Section 56.11, a valid authorization for disclosure of medical information must: (1) be "clearly separate from any other language present on the same page and … executed by a signature which serves no other purpose than to execute the authorization;" (2) be signed and dated by the patient or their representative; (3) state the name and function of the third party that receives the information; and (4) state a specific date after which the authorization expires. The information set forth on Defendant's Website, including the Website Privacy Policy and Notice of Privacy Practices, does not qualify as a valid authorization.

258.    Defendant thus violated the CMIA by disclosing its patients' medical information to third parties along with the patients' individually identifying information.

259.    Plaintiffs and Class Members seek nominal damages, compensatory damages, punitive damages, attorneys' fees, and costs of litigation for Defendant's violations of the CMIA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

A.      For an Order certifying the Class and appointing Plaintiffs and Counsel to represent such Class;

B.      For equitable relief enjoining Defendant from engaging in the wrongful conduct alleged in this Complaint pertaining to the misuse and/or disclosure of the Private Information of Plaintiffs and Class Members;

C.      For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members:

D.      For an award of damages, including, but not limited to, actual, consequential, statutory, punitive, and nominal damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

**G.**      Such other and further relief as this Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand that this matter be tried before a jury.

DATE: October 31, 2023          **TOUSLEY BRAIN STEPHENS PLLC**

By: _s/ Kim D. Stephens, P.S._
     Kim D. Stephens, P.S., WSBA #11984
By: _s/ Rebecca L. Solomon_
     Rebecca L. Solomon, WSBA #51520
     1200 Fifth Avenue, Suite 1700
     Seattle, WA 98101
     Telephone: (206) 682-5600
     Facsimile: (206) 682-2992
     _kstephens@tousley.com_
     _rsolomon@tousley.com_

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

**BARRACK RODOS & BACINE**
Stephen R. Basser*
*sbasser@barrack.com*
Samuel M. Ward*
*sward@barrack.com*
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

**EMERSON FIRM, PLLC**
John G. Emerson*
*jemerson@emersonfirm.com*
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone:  (800) 551-8649
Facsimile:   (501) 286-4659

***Counsel for Plaintiffs and the Putative Class***

* *pro hac vice* forthcoming

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992